UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| UFCW LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, On Behalf of Itself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>NEWMONT MINING CORP., WAYNE W. MURDY, PIERRE LASSONDE, BRUCE D. HANSEN, DAVID H. FRANCISCO, THOMAS L. ENOS, RUSSELL BALL, and ROBERT J. GALLAGHER,<br><br>    Defendants. | Civil Action No.<br>05-01046 MSK-BNB<br><br>Honorable Marcia S. Krieger<br><br>**Consolidated with**<br>05-01100-MSK-CBS<br>05-01141-MSK-BNB<br><br>**MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS** |

Business Litigation Associates, P.C. ("BLAPC"), attorneys for objectors Natasha L. Engan ("Engan") and the National Automatic Sprinkler Industry Pension Fund ("NASI"), respectfully move for an award of fair and reasonable attorneys' fees and costs based on their successful objection to Lead Plaintiff's Counsel's Application for Attorneys Fees. Indeed, Ms. Engan and NASI benefited the class in the following ways:

• A $4.5 million savings to the common settlement fund from the original $5 million fee demand in lead class plaintiffs' counsel's ("Class Counsel") fairness notice to the class;[1]

---

[1] Class Counsel later reduced its fee demand to $3 million (one week after Engan filed fairness objections) and claimed "the decision to request a 20% fee was made by Lead Plaintiffs Counsel several weeks before these objections were filed and thus was not made in response to the objections." (Lead Plaintiff's Response To Objections at 2 (Docket No. 142) (*citing* Declaration of Henry Rosen In Support Of Final Approval of Class Action Settlement, Plan of Allocation, of Settlement Proceeds and Application By Lead Class Plaintiff's Counsel For An Award Of Attorneys Fees And Expenses ("Initial Rosen Decl.") ¶¶ 71-72 (Docket No. 140)). The Court accepted this representation in rejecting Engan's argument that she contributed to saving $2 million from the common settlement fund. (Opinion and Order Granting Motion For Reconsideration And Appointing Special Master (Docket No. 176) at 4 n.2). The only record citation for the claim that Class Counsel reduced the fee demand "several weeks before" Engan's objections is the same paragraph of the Initial Rosen Decl. that falsely state that the Colorado Public Employees Retirement Association ("PERA") and the Pennsylvania State Employees Retirement System ("SERS") "decided to support" the "reduced" $3 million fee request. (*Compare* Initial Rosen Decl. ¶ 72 *with* Letter from Henry Rosen to Thomas C Seawell, dated March 10, 2008 ("Rosen Letter") at 1-2 (Docket No. 195) (recanting)). The Court relied on Class Counsel's false statements and the Special Master can properly award Engan fees and costs associated the $2 million benefit to the class. Fed. R. Civ. P. 60(b)(2)(relief from order for fraud, misrepresentation).

- Engan's fairness objections preserved for the class procedural due process under Rule 23(h) that forced Class Counsel to submit a renewed fee application by motion with proper notice to the class and permitted all class members to review it and, if appropriate, object to it;

- Thereafter, the Engan/NASI objection to the renewed fee application identified significant issues, which led the Court to appoint Special Master Seawell, who was recommended by Engan/NASI over the objections of Class Counsel;

- During Mr. Seawell's investigation, Engan/NASI participated in each and every procedural step and engaged in extensive and detailed analysis of Class Counsel's supplemental submissions, and asserted many detailed objections that appeared to inform the Special Master's report further reducing the Class Counsel's fees by approximately $2.5 million;

- Outside the Special Master's investigation, counsel for Engan/NASI engaged in their own due diligence of the Initial Rosen Decl. that revealed fraud on the court and forced Mr. Rosen to recant with respect to his statement that PERA and SERS "decided to support" the $3 million fee request; and

- Ultimately, the Special Master recommended a finding of contempt against Class Counsel based upon specific issues identified in Engan/NASI's objections.

Moreover, an award of Engan/NASI's fees and costs is particularly appropriate because the Court and the Special Master would otherwise be without the benefit of a sophisticated adversarial process in analyzing the egregious fee application here. Accordingly, Ms. Engan and NASI seek the award of fees in the amount of $166,706.88 and $2,605.38 in costs for having saved the class at least $2.5 million (if not $4.5 million) in unwarranted fees and costs sought by class counsel.

This amounts to less than 7 percent of the $2.5 million common settlement fund saved by Engan/NASI's objections (3.7 percent if the $4.5 million savings is used) and is well within the 10 percent of class savings guideline approved by NASI. This motion is made and based on the declarations of Irwin B. Schwartz, Kayla Hutton, and Michael W. Jacobson, copies of which are served herewith, on the pleadings, papers, records, and files in this action, and on the following grounds:

A.       Objectors That Benefit The Class Should Be Awarded Reasonable Fees

Under settled law, objectors who benefit a class settlement fund are entitled to recover their reasonable attorneys' fees and expenses.  Gottlieb v. Barry, 43 F.3d 474, 489 (10th Cir. 1994) (reversing district court's denial of special master's recommendation to award fees to objector counsel); In re Cendant Prides Corp. Litig., 243 F.3d 722, 743-44 (3d Cir. 2001); Fisher v. Procter & Gamble Mfg. Co., 613 F.2d 527, 547 (5th Cir. 1980); White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974).

As set forth in the declaration of Irwin B. Schwartz, submitted herewith, Engan incurred $57,671.50 in attorneys' fees and $1,204.91 in costs in successfully objecting to the original $5 million Class Counsel fee request as set forth in the Fairness Notice and objecting to the subsequent re-filing of Class Counsel's fee application and recommending a special master.   (Declaration of Irwin B. Schwartz In Support Of Motion For Award Of Attorneys Fees And Costs Pursuant To Fed. R. Civ. P. 54(d)(2) ("Schwartz Decl.") ¶ 11 & n.2).  Indeed, Engan correctly identified the failure in procedural due process implicated by the requirement of service of fairness objections to the $5 million fee request one week before Class Counsel filed its fee application.  (Schwartz Decl. ¶¶ 1-5).  In addition, Engan engaged in substantial efforts that led to the appointment of Thomas Seawell as special master, which also was a procedural benefit to the class.  (Schwartz Decl. ¶¶ 8, 10).

Even apart from the initial $2 million benefit to the common settlement fund, Engan should be awarded reasonable fees and costs for the procedural benefits to the class associated with her objections.  See e.g., In re Homestore.com, Inc. Sec. Litig., Civ. No. CV01-1111-RSWL(CSX), 2004 WL 2792185 5, *1 (C.D. Cal. 2004)(objector awarded actual fees for raising serious questions regarding notice upon which the court

3

found a substantial portion of the class would not have received timely notice of the class action settlement). Indeed, as Judge Pierce aptly observed, even rejected objections may be the proper basis for a fee award:

> The objections raised, although ultimately overruled, were not frivolous, and the presence of an objector represented by competent counsel transformed the settlement hearing into a truly adversary proceeding. The objections to the settlement caused this Court to spend even more hours in analyzing and assessing the complex settlement agreement, and cast in sharp focus the question of the fairness and adequacy of the settlement to all the members of the class.

Frankenstein v. McCrory Corp., 425 F. Supp. 762, (S.D.N.Y. 1977). See also Duhaime v. John Hancock Mutual Life Ins. Co., 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (awarding fees to objectors where parties adopted their objections on the content of the notice and court adopted their objection regarding payments to class counsel).

After the Special Master's appointment, Engan and NASI incurred $40,255.18 in attorneys' fees and $1,369.94 in costs associated with the review process by, among other things, (i) appearing for each and every telephone conference set by the Special Master; (ii) engaging in extensive analysis of the materials submitted by lead class counsel in support of their fee application relating to the reasonableness of the hours' claimed, the rates charged and the expenses incurred. (Schwartz Decl. ¶ 21). This extensive analysis included Engan's and NASI's submission of an omnibus Excel spreadsheet comparing Class Counsel's claimed rate structure with reasonable rates reflected in the fee application submissions as well as the Laffey Matrix. (Declaration of Stephanie M. Shimada dated March 24, 2008, Ex. C (Docket No. 197)). This resulted in an interview under oath of Ms. Shimada confirming its evidentiary value. (Schwartz Decl. ¶ 18).

Outside the formal Special Master's investigation, counsel for Engan and NASI engaged in their own due diligence of Class Counsel's representations to the Court in the fee application. (Schwartz Decl. ¶ 13) Among other things, Class Counsel contended that their $3 million fee request was supported by numerous institutional investors, including PERA and SERS. (Initial Rosen Decl. ¶ 72). Counsel for Ms. Engan and NASI contacted these institutional investors and discovered that neither PERA nor SERS had approved the $3 million fee application. (Schwartz Decl. ¶ 13). Thereafter, counsel for Ms. Engan and NASI urged those class members to set the record straight, which led to PERA writing directly to the Special Master disclaiming any approval of the $3 million fee application (Letter To Special Master Seawell from Irwin B. Schwartz dated March 3, 2008, Exhibit A (Docket No. 186)) and SERS forcing lead counsel to recant. (Rosen Letter, Exhibit A).

Finally, it appears that the Special Master agreed with many of Engan/NASI's specific objections to Class Counsel's supplemental submission, which objections finely deconstructed the fee application to expose legal infirmities, material omissions, blatant padding and false representations. For example Engan/NASI contended that Class Counsel's hourly rates were unsupportable in light of Denver rates:

> [L]ead class plaintiffs' purported reasonable and ordinary rates are vastly inflated even in comparison to the leading law firms in their respective cities and they provide no support to justify those rates or any deviation from the prevailing Denver rates.
> …
> The [Fee] Application provided no meaningful basis to evaluate whether class plaintiffs needed to look beyond Denver for lead class plaintiffs counsel or whether the claimed rates were reasonable by geographic location of each of the co-lead class plaintiffs counsel.

(Supplemental Notice Of Objection And Proposed Discovery ("Supplemental Objection") at 6 (Docket No. 196) (March 24, 2008)).

5

The Special Master found that:

> [L]ocal hourly rates should be used where there is no clear showing that the matter could not have been handled by the local bar. There is no such showing here. Therefore, in determining the lodestar amount, I will be guided by the hourly rates actually employed by Liaison Counsel, a Denver law firm, as the maximum reasonable rates applicable in this case. Specifically, I will use the hourly rate of $425, the highest charged by Liaison Counsel, as a cap, and exclude the excess over $425 per hour in making the lodestar calculation for attorneys from the other two law firms who have sought an award based on higher hourly rates.

(Report of Special Master Concerning Plaintiff's Motion For Attorney Fee And Expenses ("Fee Report") at 6 (Docket No. 217) (August 6, 2008)).

Engan and NASI also identified Class Counsel's unjustifiable and blatant time padding as demonstrated by unsupportable and duplicative time entries:

> [T]here can be no dispute that, among three law firms and dozens of time keepers, there was duplicative, triplicative and even quadruplative work on the various tasks associated with the case . . . without explanation as to why the class should be charged for multiple attorneys from multiple firms working on the same task.

(Supplemental Objection at 9, 10).

The Special Master found that:

> There are categories of work in which the total amount of time spent is excessive by any standard.  Objectors complaint about the total amount of time spent in essentially every category and viable arguments can be made to support this position…. There is an enormous amount of duplication by different lawyers, which can only be expected when 17 lawyers are involved, and indeed there appears to be a large amount of either duplication or wheel-spinning by individual lawyers.

(Fee Report at 8).

Engan and NASI further demonstrated that Class Counsel's time keeping was vague and dubious:

> Moreover, most descriptions are simply incomprehensible as to the actual work performed and the actual time reasonable and necessary to perform those tasks. This is particularly true for Mr. Rosen and his partners, who replicated vague descriptions over and over again in separate time

6

> entries, which raises serious questions of whether the actual time entries were made on a contemporaneous basis and provides no guidance to the Special Master as to how their services benefited the class.

(Supplemental Objection at 12).

The Special Master's analysis found that:

> [Class Counsels' time] entries can hardly be called 'meticulous, contemporaneous time records' and they certainly do not reveal what services were rendered, or even on which tasks work was done. ..This practice is so extensive … that I have concluded that the time entries for timekeepers using predominantly template descriptions of services should have 50% of their recorded time excluded from the lodestar determination.

(Fee Report at 9).

In addition, Engan and NASI argued that Class Counsel's requested 3.55 multiplier was outsized and legally unjustifiable:

> Here, the Application seeks a 3.55 multiplier of a highly suspect lodestar yielding an eye-popping $1,550 per hour for every person that worked on the case.

(Supplemental Objection at 12).

The Special Master went further and allowed no lodestar enhancement at all:

> The lodestar analysis presumptively results in calculation of a reasonable fee award, and thus adjustments to the lodestar should only be made in rare and exceptional cases. … [I find] no substantial reason that even suggests [a multiplier].

(Fee Report at 13).

Last, Engan and NASI vetted and objected to many of the claimed Class Counsel's expenses as unsubstantiated or unreasonable:

> In addition, the Special Master should scrutinize the lead class plaintiffs counsel travel expenses. Among other things, the back up materials submitted by Coughlin Stoia and Schatz Nobel reflect their attempt to charge the class for first class air travel, travel expenses for consultant Judge McCue (Ret.), Mr. Rosen's side trip to Los Angeles on November 1, 2005 and three movies in one night and laundry service during Mr. Rosen's July 12-14, 2006 stay at the five star Hotel Teatro.

7

(Supplemental Objection at 19, n.9).

The Special Master agreed and reported that:

> The necessity for the expenses of Coughlin Stoya for which reimbursement is sought is not explained. A few are either self-explanatory or understandable in the context of dates and categories.

(Fee Report at 13).

In sum, Engan and NASI benefited the class both by helping to preserve at least $2.5 million of the common settlement fund and by ensuring procedural due process. Under these circumstances Engan and NASI should be awarded reasonable fees and costs for their service to the class. Gottlieb v. Barry, 43 F.3d at 489.

B.  Objectors Attorney's Fees Should Be Awarded Based On Value To The Class.

The Special Master should award Engan and NASI significant fees and costs to encourage objector participation in the class action settlement fee application process stage. Indeed, as judges in this district and elsewhere have noted, once the lead plaintiff and defendants have reached a settlement, the [fee application review] process is usually devoid of "the checks and balances of the adversary system." In re Boston Chicken Sec. Litig., 2006 WL 2338118, *1 (D. Colo. Aug. 10, 2006) (Miller, J.). See also In re Chiron Corp. Sec. Litig., 2007 WL 4249902, *4 (N.D. Cal. Nov. 30, 2007) ("Common fund cases create a situation in which normal reliance on the adversary process to police the appropriateness of a fee award is unavailing). Moreover, given the significance of PSLRA's notice and objection process, class members should be encouraged to exercise their rights to object. In re Veritas Software Sec. Litig., 496 F.3d 962, 970 (9th Cir. 2007).

Indeed, courts have discretion to award fees to objectors as a percentage of the value they preserved for the class from the common fund. In re: Prudential Ins. Co. of

Am. Sales Practice Litig., 273 F. Supp. 2d 563, 572 (D.N.J. 2003) (objectors entitled to 1.4% of class counsel's fee award because they were responsible for 1.4% of the total class recovery); Great Neck Capital Appreciation Inv. P'ship, L.P., v. Pricewaterhousecoopers, 212 F.R.D. 400, 416 (E.D. Wis. 2002) (appropriate objector's attorney's fee award is five percent of the amount request by class counsel plus reasonable expenses). Other courts have awarded objectors the amount of the fund preserved. In re Horizon/CMS Healthcare Corp. Sec. Litig. 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) ("[t]he Court therefore believes it is appropriate that the attorneys' fees of both Milberg Weiss and Barrack should be reduced by 3% and that this amount be awarded to counsel for the State Funds").[2]

Here, NASI agreed that BLAPC should be awarded up to 10 percent of the common settlement fund preserved for the class, subject to a lodestar cross check at a presumptively reasonable enhancement. (Declaration of Michael W. Jacobson In Support Of Motion For Award Of Attorneys Fees And Costs Pursuant To Fed. R. Civ. P. 54(d)(2) ("Jacobson Declaration") ¶ 6). As the Special Master noted in the Fee Report, an analogous arm's length fee agreement between class counsel and lead plaintiff is entitled to a presumptive acceptance in determining reasonable fees. (Fee Report at 5 (citing In re Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001))). The 10 percent measure would result in a fee award to BLAPC of $250,000 to $450,000, depending on whether the Special Master credits Engan with the initial $2 million savings to the common settlement fund. But, by BLAPC's agreement and Tenth Circuit standards, this amount must be moderated by lodestar cross-check, which using a 1.5 multiplier as set

---

[2] At least one court awarded objectors' fees and ordered that they be deducted from class counsel's award to preserve the class settlement fund. Shaw v. Toshiba Am. Info. Sys. Inc., 91 F. Supp. 2d 942, 974 (E.D. Tex. 2000) (requiring class counsel's payment of objector's counsel fees so that class recovery is left unchanged).

forth in In re Ribozyme Pharm., Inc. Sec. Litig., No. 99-2235 (MSK), slip op. (D. Colo. September 25, 2003) (confirming special master report), yields $166,706.88 as reasonable for the work done on behalf of Engan and NASI. (Schwartz Decl. ¶ 22).

C.  Under the Johnson Factors, The Requested 1.5 Enhancement Is Reasonable

As confirmed in the Fee Report, in assessing the propriety of the application of an enhancement to lodestar, the Tenth Circuit employs a "hybrid" approach; cross checking a "percentage of fund" methodology with a twelve-factor test derived from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). (Fee Report at 9-10). As set forth below, application of the twelve Johnson factors strongly favors the assessment of a meaningful lodestar enhancement for BLAPC.

Factor 1:   The Time and Labor Required

From the onset, BLAPC aggressively prosecuted Engan's and NASI's objections in this matter. This included reviewing nearly every meaningful class counsel fee-related decision in the Tenth Circuit and dozens of others in circuits around the country, all in support of the three lengthy objection briefs. (Schwartz Decl. ¶ 40). BLAPC attended the fairness hearing in order to prosecute the objections to the fullest extent possible. (Schwartz Decl. ¶ 4). BLAPC scrutinized nearly every aspect of the each of the fee applications, including the digital spreadsheet purportedly containing time records, expense records, Class Counsel's multiple declarations and other various submissions to the Court and Special Master. (Schwartz Decl. ¶¶ 13, 16, 40). For example, BLAPC was required to systematically review each and every time entry of the 44 timekeepers at the three Class Counsel firms who billed into the case and then cross-check those time entries against each other to demonstrate double and triple

billing and well as the failure to adequately explain the nature of the alleged work. (See Supplemental Objection at 3-4, 6, 9-17).

In doing this, BLAPC effectively challenged Class Counsel's fee application on nearly every meaningful ground; uncovering evidence of routine duplicative and unjustifiable billing, dubious and vague "cut and paste" billing entries, and the application of inappropriately high billing rates. (Schwartz Decl. ¶ 40). This work was made all the more difficult by Class Counsel's deceptive declarative representations concerning alleged support of their fees by certain large institutional investors, and undocumented and unjustifiable expensing as well as their moving-target fee applications by which they attempted to include after-the-fact time and expense in previously submitted lodestar calculations. In doing so BLAPC developed detailed Excel spreadsheets and made available its paralegal for the Special Master's interview to confirm the preparation of these spreadsheets. (Schwartz Decl. ¶¶ 17, 18).

       Factor 2:    <u>The Novelty and Difficulty of the Legal Questions</u>

While objections to class counsel's fee requests are not novel, Engan's initial objections were extremely difficult given that they were made without the benefit of seeing Class Counsel's fee application, which was only filed one week later. The Court's due process ruling on Engan's initial objection yielded an important decision on the interplay between Class Counsel's unopposed fairness hearing schedule and Rule 23(h)'s requirement for a noticed motion in support of a fee application.

Moreover, given Class Counsel's reduced fee demand of 20 percent, this percentage has been widely approved in other class settlement fee applications, BLAPC knew it faced a difficult legal task to protect the common settlement fund from cannibalization by unwarranted attorneys fees under the cloak of the widely- accepted

11

reasonable percentage of fund measure.  Nevertheless, BLAPC undertook this project with the expectation that, when exposed to scrutiny, Class Counsel's fee application would be further reduced, thereby preserving even greater value for the class. (Schwartz Decl. ¶ 38).

Factor 3:    The Skill Requisite to Perform the Legal Service Properly

For this factor, BLAPC respectfully suggests that the Fee Report is the best evidence:  BLAPC's two lawyers, two paralegals and one legal intern effectively challenged the fee application of one of the largest and most powerful class action plaintiffs firms in the world as well as two other plaintiffs firms, resulting in a massive reduction in the fees sought by Class Counsel.  See also Factor 9 below.

Factor 4:    The Preclusion of Other Employment

At all relevant times, BLAPC had only five attorneys (Schwartz Decl. ¶ 23).  In devoting approximately 250 attorney hours to Engan's and NASI's objections over nine months, BLAPC necessarily had to divert its attention from other pending matters and affirmatively pursuing new matters.  (Schwartz Decl ¶ 39).  BLAPC undertook this representation on a contingency basis even though BLAPC has never engaged in contingency work on any other project.  (Schwartz Decl. ¶ 37).  That said, BLAPC is not able to identify any single engagement that it refused as a result of its efforts in this case.

Factor 5:    The Customary Fee

Enhancement of fee awards to objector counsel is not extraordinary especially when – as here – BLAPC's labors result in such indisputably outstanding and unprecedented results.  In fact, as discussed above, courts have acknowledged that in these circumstances objectors' counsel should receive an enhanced fee recovery, often

based on a calculation involving an assessment of a percentage of the savings to the class. BLAPC seeks an enhancement in line with these cases as provided with its agreement with NASI as set forth in the Jacobson Decl. submitted herewith.

    Factor 6:    <u>Whether the Fee is Fixed or Contingent</u>

BLAPC's fee is fully contingent. Moreover, when Engan first elected to object to the original fee application, BLAPC took a tremendous leap of faith since Engan was procedurally forced into deciding to object even before she had the opportunity to review and scrutinize the fee application. (Schwartz Decl. ¶¶ 2, 36). Moreover, this was the first time BLAPC had ever sought to challenge a fee application of any kind, and its business – and thus its cash flow model -- was comprised entirely of non-contingent business litigation matters. (Schwartz Decl. ¶ 37, 38). In accepting the engagement of objecting to the fee application contingently, BLAPC -- as a firm -- entered into high-risk uncharted waters and, as the Special Master recognized in the Fee Report, under the <u>Johnson</u> factors, BLAPC should be compensated for taking this risk by receiving a premium over BLAPC's normal hourly rates. (Fee Report at 11).

    Factor 7:    <u>Time Limitations Imposed by the Client or the Circumstances</u>

BLAPC's clients imposed no time constraints upon it other than what was set forth in the Court's and Special Master's scheduling orders.

    Factor 8:    <u>The Amount Involved and the Results Obtained</u>

Again, BLAPC respectfully suggests that the result speaks for itself, BLAPC -- a five attorney firm -- fiercely and effectively litigated against three Class Counsel firms with hundreds of attorneys and prevailed in preserving at least $2.5 million (if not $4.5 million) of the common settlement fund for the benefit of the class. This result can only

be described as validation of BLAPC's efforts and an extraordinary beneficial outcome by any possible metric.

Factor 9:   The Experience, Reputation and Ability of the Attorneys

BLAPC is a highly experienced litigation firm with a sub-specialty in securities litigation.  For example BLAPC recently was co-lead defense counsel in In re Sapient Corp. Derivative Litig., 555 F. Supp. 2d 259 (D. Mass. 2008), a multi-million dollar securities class action/derivative litigation in which Sapient prevailed in having the action dismissed outright.   BLAPC likewise successfully moved to dismiss the securities class action In re Boston Commc'ns Group, 532 F. Supp. 2d 260 (D. Mass. 2008).   As set forth in the Jacobson Decl., BLAPC is also engaged in analyzing and advising institutional investors in connection with their rights and remedies for potential securities fraud suits.  (Jacobson Decl. ¶ 2; see also Schwartz Decl. ¶ 23 & Ex. D (qualifications of BLAPC attorneys who worked on this matter)).

Factor 10:   The Undesirability of the Case

At the outset, Engan's objection to the initial fee application was an undesirable engagement given there was minimal financial reward and BLAPC is unaware of any other law firm that engages in such practice on a regular basis.  (Schwartz Decl. ¶¶ 36-38).  Indeed, taking on Engan and NASI as clients for the purposes of this objection required BLAPC to litigate against one of the largest and most powerful class action plaintiffs' firms in the country, objecting to a fee award that at first blush appeared to be sanctioned by two of the largest state pension funds in the country and that had been signed off on after a mediation that included a retired judge.  (Schwartz Decl. ¶ 13).  As the Fee Report recognized, such fee applications are presumptively deemed

reasonable and thus it is not surprising that no other law firm appeared to object on a contingency fee basis.

Factor 11:   The Nature and Length of the Professional Relationship with Client

Irwin Schwartz has represented NASI since September 2005 and BLAPC works closely with NASI on matters usually arising out of proposals by various plaintiffs' class action lawyers to represent NASI as lead plaintiff in class actions. (Jacobson Decl. ¶ 2; Schwartz Decl. ¶ 34). While Irwin Schwartz previously represented Engan, this was BLAPC's first engagement on behalf of Engan. (Schwartz Decl. ¶ 35).

Factor 12:   Awards in Similar Cases

As discussed more fully in Johnson Factor 5 above, courts routinely award objectors counsel fees for successful objections to fee awards, no less a case where an objector successfully sought to reduce class counsel's fee award so drastically and preserved so much of the common settlement fund for the class.

D.   Engan and NASI Should Be Awarded $2,605.38 In Costs

As set forth in the Declaration of Kayla Hutton submitted herewith, Engan and NASI incurred $2,605.38 in costs during the objection process. Apart from the ordinary reproduction, delivery, transcription and legal research costs, the only costs were one trip to Denver to attend the fairness hearing (Declaration of Kayla Hutton In Support of Motion For Award Of Attorneys Fees And Costs Pursuant To Fed. R. Civ. P. 54(d)(2) ("Hutton Decl.") ¶ 9). While the Court ultimately deferred consideration of Class Counsel's fee application at that hearing due to procedural due process concerns, Engan had no prior notice of the Court's determination and thus was prudent to send counsel for what may have been the only opportunity to object to the fairness of the original fee application. (Schwartz Decl. ¶ 5).

CONCLUSION

For the foregoing reasons, Engan and NASI respectfully request that the Special Master award BLAPC $166,706.88 in reasonable fees and $2,605.38 in costs in objecting for the benefit of the class for a total requested award of $169,312.26.

Dated: August 27, 2008                    Respectfully Submitted,


/S/ Irwin B. Schwartz
Irwin B. Schwartz
Business Litigation Associates, P.C.
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
Phone:  617-421-1800

Attorney for Objectors Natasha L. Engan and
National Automatic Sprinkler Industry Pension Fund


**Certificate of Service**

I, Irwin B. Schwartz, attorney for Natasha L. Engan, hereby certify that on this 27th day of August 2008, I filed the foregoing document with the Clerk of the Court by CM/ECF which will notify all counsel of record registered with ECF of such filing and I sent a true and correct copy of the foregoing document by United States Mail to the following unregistered parties:

Sanford Ress
P.O. Box 1250
Jackson, WY 83001-1250

Lawrence Schonbrun
86 Eucalyptus Rd.
Berkeley, CA 94705

Clifford Whitehill
5320 W. Harbor Village Dr.
Vero Beach, FL 32967


/S/ Irwin B. Schwartz
Irwin B. Schwartz

16