UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| UFCW LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, On Behalf of Itself and All Others Similarly Situated, | X : : : | Civil Action No. 05-01046 MSK-BNB |
| | : | Honorable Marcia S. Krieger |
| Plaintiff, | : | |
| | : | **Consolidated with** |
| v. | : : | 05-01100-MSK-CBS 05-01141-MSK-BNB |
| NEWMONT MINING CORP., WAYNE W. MURDY, PIERRE LASSONDE, BRUCE D. HANSEN, DAVID H. FRANCISCO, THOMAS L. ENOS, RUSSELL BALL, and ROBERT J. GALLAGHER, | : : : : : : | **DECLARATION OF IRWIN B. SCHWARTZ IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS FEES PURSUANT** |
| Defendants. | X | **TO FED. R. CIV. P. 54(d)(2)** |

I, IRWIN B. SCHWARTZ, declare as follows:

1.      I am an attorney duly admitted in the Commonwealth of Massachusetts and the States of New York and California and this Court.  I am the principal in the law firm Business Litigation Associates, P.C. ("BLAPC").  My firm is counsel to objectors Natasha L. Engan ("Engan") and National Automatic Sprinkler Industry Pension Fund ("NASI") in these consolidated actions.  I submit this declaration in connection with our request for an award of reasonable attorneys fees and costs in connection with Engan's objections to $5 million in lead class plaintiffs' counsel's attorneys fees and costs identified in the settlement notice to the class in this action and the unfairness of the class counsel's proposed fairness objection process, and Engan's and NASI's objections to class counsel's $3 million fee application and participation in the special master review process.[1]

---

[1]      We entered an appearance on behalf of NASI as an objector on January 4, 2008 and all time was recorded under Engan's name, as reflected in the invoices attached hereto.

<u>Even Prior To The Special Master's Appointment, Engan Benefitted The Class</u>

2.      On November 27, 2007, I entered an appearance for Engan as an objector and submitted an objection on behalf of Engan to the $5 million attorneys' fees and costs application reflected in the proposed settlement of this action.  (Docket No. 132).  In that objection, we noted the procedural unfairness of the requirement that class members object to the fairness of the requested attorneys' fees and costs one week before class counsel was required to support its fees and costs request by motion to the Court.  In addition, we asked for discovery into the bases for the requested fees as a predicate to providing further detail to our objections.

3.      Subsequently, on December 4, 2007, lead class plaintiff's counsel submitted their fee application seeking "only" $3 million, thereby saving the class $2 million from the maximum fee demand set forth in the proposed settlement agreement.   (Motion For Final Approval Of Class Action Settlement, Plan Of Allocation Of Settlement Proceeds And Application By Lead Plaintiff's Counsel For An Award Of Attorneys' Fees And Expenses (the "Initial Application")(Docket No. 138)).  Lead class plaintiff's counsel sought to attribute this unilateral $2 million reduction to informal objections made by other class members, but the Initial Application neither detailed the dates upon which those informal objections took place nor negated the impact of BLAPC's objection on behalf of Ms. Engan.

4.      During the December 11, 2007 settlement fairness hearing, the Hon. Judge Krieger noted that in response to the objectors the lead class plaintiffs reduced their fee demand:

"In the notice to the class members, the plaintiffs' counsel indicated its intention to move for an award of attorneys' fees amounting to up to one-

2

third of the settlement value, or a total of $5 million, plus expenses of up to $215,000. Several objectors have objected to this. In response, plaintiffs' counsel has indicated that it's revised its request for fees and seeks an award of attorneys' fees in the amount of 20 percent of the settlement fund, or $3 million. Plaintiff's counsel also states that it is requesting [reducing] its request for expenses to $143,253."

Transcript of Hearing on Settlement at 25:3-12.

5.      In addition, at the December 11, 2007 hearing, the Court approved the proposed settlement, but found that the plaintiff's counsel's fee application process failed to satisfy Fed. R. Civ. P. 23's due process requirements. Accordingly, the Court ordered class counsel to re-submit their fee application by noticed motion, provided a deadline for objections to that re-submission, and established a process for the appointment of a special master to evaluate the fee application and any objections to the extent any of the objections appeared to have merit.  Transcript of Hearing on Settlement at 24:24-25:2.  I traveled to Denver for the December 11, 2007 with the expectation of presenting Engan's objections, but only participated minimally because the Court announced during the hearing that she would not consider the fee application.

6.      The Court specifically noted that the special master would have the authority to order the discovery we requested for Engan if appropriate, invited Engan to propose special master candidates, and urged class counsel and Engan to attempt to agree on a special master.  Transcript of Hearing on Settlement at 26:3-11.  To this end, BLAPC interviewed numerous special master candidates and proposed to class counsel four highly qualified Denver lawyers, including Thomas C. Seawell.

7.      As ordered by Judge Krieger, lead class plaintiffs counsel re-submitted their fee application on December 20, 2007 requesting $2,971,349.28

in fees and $143,253.59 in expenses (Motion For Approval Of Application By Lead Plaintiff's Counsel For An Award Of Attorneys' Fees And Expenses ("Re-Submitted Fee Application") (Docket No. 158)).

8.      Class counsel would not agree to any of Engan's proposed special master candidates and therefore Engan submitted a letter to Judge Krieger on December 24, 2007 proposing Mr. Seawell as Engan's primary candidate and identifying three other potential special master candidates if the Court deemed Mr. Seawell inappropriate (Docket No. 168).

9.      On January 4, 2008 Engan and NASI objected to the Re-Submitted Fee Application identifying, among other things, the lack of contemporaneous time records as a major failure, arguing that some of the expenses were unsupported and thus objectionable, and disputing the Re-Submitted Fee Application's <u>Johnson</u> factors arguments (Notice of Objection (Docket No. 173)).

10.     Judge Krieger's Opinion And Order Granting Motion For Reconsideration And Appointing Special Master on January 9, 2008 ("Opinion and Order") (Docket No. 176) appointed Mr. Seawell as Special Master and granted him "the authority to hear and resolve collateral issues relating to the attorney fees motions, including requests for additional briefing, discovery, and such other matters as may be incident and necessary to permit him to consider the underlying fee requests".  (Opinion and Order at 4).

11.     For this work from November 27, 2007 to January 4, 2008, BLAPC incurred fees in the amount of $57,671.50.[2]

_____

[2]      Invoices reflecting BLAPC contemporaneously recorded time entries through January 4, 2008 are attached hereto as Exhibit A.  Costs are discussed in the Declaration of Kayla Hutton ("Hutton Decl.") submitted herewith.  All contemporaneous time entries are available to the Special Master in Excel format upon request.

Engan And NASI Benefitted The Class Through The Special Master Process

12.    On January 18, 2008, Mr. Seawell issued a procedural order that outlined in detail the process by which he intended to evaluate the claimed lodestar set forth in the Re-Submitted Fee Application. (Procedural Order No. 1 (January 18, 2008) (Docket No. 179)).  By this procedural order, Mr. Seawell required each firm seeking to share in a fee awarded by the Court or reimbursement of any expenses to submit a separate fee application and submit supporting data in excel file format to the Special Master and all objectors ("Supplemental Fee Application").  Objectors were given the opportunity to submit supplemental objections based on the Supplemental Fee Applications and supporting data along with the right to propose further discovery points to the Special Master. (Special Master Procedure Order No. 3 (February 4, 2008) (Docket No. 182)).

13.    While class counsel were preparing their supplemental fee applications, BLAPC engaged in due diligence as to the representations made by Henry Rosen to the Court in his Declaration filed with the Initial Application and incorporated by reference in the Re-Submitted Fee Application that three large institutional Newmont shareholders, including the Colorado Public Employees' Retirement System ("PERA"), supported class counsel's $3 million fee application.  (December 4, 2007, Docket No. 140, ¶¶ 71-72).  In particular, Noah Shube called each of the identified institutional investors and disclosed to their representatives that Mr. Rosen had represented to the Court that each had supported the entire Initial Application, including class counsel's fees.  In these calls, BLAPC learned that two of the three institutional investors had in fact done

no such thing.  Indeed, neither PERA nor the Pennsylvania State Employees'

Pension Fund ("SERS") had approved class counsel's fee application and we

urged these institutions to contact the Court or Mr. Seawell to correct the record.

14.     Ultimately, both PERA and SERS took decisive action.  They both

wrote to Mr. Rosen to demand he correct the record and PERA wrote directly to

Mr. Seawell to urge him not to rely on anything set forth in the Rosen Declaration

with respect to any approval by PERA.  (Letter to Special Master Seawell from

Gregory W. Smith attached as Exhibit A to March 3, 2008 Letter to Special

Master Seawell from Irwin B. Schwartz (Docket No. 186)).   This forced Mr.

Rosen to admit that he misrepresented PERA's and SERS's "support" by letter

to Mr. Seawell on March 10, 2008 (Docket No. 195).

15.     Notwithstanding Mr. Seawell's detailed procedural orders requiring

class counsel to serve copies of all submission upon all objectors, class counsel

continued to attempt to frustrate Engan's and NASI's ability to engage in a

meaningful analysis of class counsel's purportedly contemporaneous time

records.  For example, class counsel failed to provide BLAPC with digital copies

of the Excel spreadsheets required by Procedural Order No. 1 and only did so

after BLAPC was forced to write to Mr. Seawell to complain. (March 13, 2008

Letter to Special Master Seawell from Irwin B. Schwartz (Docket No. 188)).

16.     Once BLAPC received the Excel spreadsheets, it performed a

thorough review of the data supporting the Supplemental Fee Application.

Among other things, we examined the reasonableness of the claimed rates

based on class counsel's submission of a national survey of large law firm rates

as well as the Justice Department's Laffey Matrix.  Based on these rates, we

created additional Excel spreadsheets to demonstrate to Mr. Seawell the impact of class counsel's inflated rates, which were not justified by anything in the Supplemental Fee Application.  We also examined the purported contemporaneous time entries in minute detail and identified what we called "cut-and-paste billing" that undercut the credibility of the time entries.  We noted, where appropriate, that many of the time entries were nonsensical based on the status of the case at the time and there was no justification for these entries anywhere in the Supplemental Fee Application.  Finally, we attempted to connect the requested expense items with legitimate costs that benefited the class and we found almost no justification for the great bulk of requested expenses.

17.    Accordingly, BLAPC submitted a supplemental objection and proposed discovery to the Special Master ("Supplemental Objection" (March 24, 2008) (Docket No. 196)), which included a declaration by Stephanie Shimada, a paralegal, that documented our creation of five Excel file attachments that analyzed the data submitted in support of the Supplemental Fee Applications (Declaration of Stephanie M. Shimada (March 24, 2008) (Docket No. 197)). We provided these spreadsheets in digital format to Mr. Seawell and all counsel.  As set forth more fully in the Motion For Award Of Attorneys Fees And Costs submitted herewith, our Supplemental Objection identified many of the defects found by Mr. Seawell in his reports to the Court.

18.    Mr. Seawell ordered and conducted on April 8, 2008 a telephone interview of Ms. Shimada under oath.  (Special Master Procedure Order No. 5

(April 3, 2008) (Docket No. 200)).  All counsel and objectors were given the right to question Ms. Shimada.

The Fee and Cost Report

19.     Mr. Seawell submitted his final report detailing the analysis of reducing the amount of attorneys fees from $2,971,349.28 to $451,493 and the expenses from $143,253.59 to $48,304.82  (Report of Special Master Concerning Plaintiff's Motion For Attorney Fees And Expenses ("Report of Special Master") at 12 (Docket No. 217) (August 6, 2008)).

20.     In addition, on August 22, 2008, Mr. Seawell entered a report recommending a finding of contempt against Mr. Rosen and class counsel arising from fraudulent statements to the Court purportedly justifying the requested fees and costs through claimed witness interviews ("Contempt Report" (Docket No. 219)).  Mr. Seawell expressly noted in his August 22 Report that Engan and NASI identified this issue in our Supplemental Objection. (Contempt Report at 5).

21.     Total fees and costs incurred by BLAPC in connection with the special master review process from January 5, 2008 through August 7, 2008 was $40,255.18 in fees and $1,369.94 in costs.[3]

22.     The aggregate total lodestar fees incurred by BLAPC in connection with its objections to the class counsel's requested fees and costs award up through the filing of this application is $111,137.92 in fees and $2,605.38 in costs.[4]  Applying a 1.5 multiplier enhancement, the total requested reasonable

---

[3]       An invoice reflecting the associated BLAPC contemporaneously recorded time is attached hereto as Exhibit B and costs are discussed in the Hutton Decl..

[4]       Subsequent to the entry of the Report of Special Master, BLAPC has incurred $13, 211.24 in fees and $30.54 in costs, primarily associated with analyzing the Report and discussing

fees would be $166,706.88

BLAPC's Rates Are Fair And Reasonable

23.     BLAPC's staff consists of five attorneys based in Massachusetts, New York and California, and two paralegals based in Massachusetts. Occasionally we have law student interns who work in the Massachusetts office. A description of our firm's practice is available at www.business-litigation-associates.com.

24.     While four of the five attorneys worked on this matter, two attorneys primarily worked on this matter: myself and Noah Shube, who is of counsel to BLAPC.   A summary of our relevant qualifications and experience is attached as Exhibit D.

25.     I am based in Massachusetts, where reasonable billing rates for firms of our size and experience range from $450 to $575 per hour for partners, $255 to $340 per hour for associates, and $110 to $185 per hour for paralegals for cases involving complex commercial litigation.  Fronk v. Fowler, No. 021216, 2007 WL 1130381, *3 (Mass. Super. Ct. Feb. 23, 2007).  My rate at all times relevant to this matter is $425 per hour.

26.     Mr. Shube is of counsel to BLAPC, based in New York City.  New York courts have found that billing rates of $430 per hour for partners and $325 per hour for experienced associates to be reasonable, even for small firms. Wise v. Kelly, No. 05-5442(SAS)(THK), 2008 WL 482399, **7-9 (S.D.N.Y. Feb. 21, 2008).  When we first filed an objection for Engan, Mr. Shube's rate was $350 per hour.  His current rate is $400 per hour.   We seek compensation

---

it with clients, preparing this fee application, and reviewing and analyzing the contempt report.  An invoice reflecting BLAPC contemporaneously recorded time subsequent to August 7, 2008 is attached hereto as Exhibit C.

based only on Mr. Shube's actual rates at the time the work was done and not the current rate.

27.     In addition, Michael Andrews, a junior associate based in Massachusetts, worked 8:40 at $180 per hour and John Komar, of counsel to the firm based in California, worked 1:00 at $325 per hour on discrete legal research projects.

28.     BLAPC employed three paralegals to assist on this case, all of whom were or are based in the Massachusetts office.  The billing rates for these paralegals are also presumptively reasonable; $110 per hour for a senior paralegal (Kayla Hutton ("KH")) and $75 per hour for each of the two junior paralegals (Stephanie Shimada ("SM") or Christopher Hatfield ("CH")).  Fronk, 2007 WL 1130381, at *3 (rates of $110 to $185 for paralegals are reasonable).

29.     Interns Nicholas Cassie and Michael Beagan, law students at Northeastern University Law School, devoted a total of 18:48 at $125 per hour on discrete legal research projects.

30.     These rates are at or below maximum reasonable rates for attorneys fees reimbursement of Denver counsel.  (Special Master Report at 6).

31.     BLAPC tracks employee time entries on a contemporaneous basis. From November 2007 to March 2008, BLAPC used a combination of EZ Time (www.eztime.com) and QB Timer software for employees to enter billable time, which automatically required daily entries by client and matter.  From March 2008 to the present, BLAPC used Amicus Attorney software for employees to enter billable time, which permits time entry on a task by task basis (i.e., for each e-mail or phone call) and aggregates it daily by client and matter.  While all of

these applications permitted employees to enter time as a percentage of hours (i.e., "0.1" hours), QB Timer and Amicus Attorney were set to track actual time to the minute, not up to the next fraction of an hour.  BLAPC employees are instructed to track actual time using these features if available, but may enter time in no greater fraction than tenths of hours if they were unable to use the actual time feature.

32.     Throughout the entire relevant period, BLAPC uploaded time entries weekly into our invoicing database through Quick Books software.  On a bi-weekly basis, BLAPC circulated confirmatory time sheets to each employee for review and confirmation, which review and approval is a condition of employment.  I then personally review all time sheets on a bi-weekly basis.

33.     In the ordinary course, on a monthly basis, I review all time entries on a client by client basis, writing down any entries that I believe are excessive for the work performed, even though the entry accurately reflected the hours the employee worked.   For this matter, I did not engage in that monthly review because, unlike all other matters in the firm, this was on contingency and no monthly invoices were required.  I did, however, review the time entries for the invoice attached as Exhibit A (Dec. 11, 2007) prior to its creation and I have reviewed all the other entries in the exhibits hereto prior to executing this declaration.

BLAPC Should Be Granted An Enhancement

34.     As set forth in the Michael Jacobson declaration submitted herewith, I commenced representing NASI in September of 2005 and BLAPC has represented NASI numerous times since then, outside of this objection.

35.     I met Engan in 2000 when I represented her company, Commonwealth Associates Consulting, Inc., in a usurpation of corporate opportunity case.  I represented Engan in 2001 in a dispute with a subsequent employer.  Thereafter, prior to this action, neither I nor BLAPC have had a professional relationship with Engan, although I maintained a personal relationship with her.

36.     This is precisely the type of case in which counsel should be awarded an enhancement on its lodestar.  Indeed, BLAPC agreed to object on Engan's and NASI's behalf as a matter of principle to protect absent class members from overcharging by class counsel.    BLAPC did so initially without the benefit of being able to evaluate class counsel's fee application, which was due one week after the initial objection, and thus BLAPC originally objected primarily on the procedural unfairness of class counsel's fairness hearing scheduling order.  BLAPC became convinced that class counsel was seeking windfall fees and costs based on the apparently minimal work done, which fees and costs were unfair to the class.  On that basis, BLAPC and its clients determined to continue to prosecute their objections.

37.     But since neither Engan nor NASI stood to gain significant sums from whatever common settlement fund we managed to preserve, and thus were not prepared to pay BLAPC's usual rates, BLAPC undertook this representation on a contingency basis, with the understanding that it could only be paid through benefitting the class and seeking a fee award from the court.  Such a contingency is unprecedented for BLAPC, which has never in its history accepted a contingency fee engagement, and I personally have not accepted a

contingency fee engagement in at least ten years.  BLAPC nevertheless agreed

to prosecute Engan's and NASI's objections due to what we believed was

egregious overcharging by class counsel and because, as is widely recognized,

courts usually do not usually have the benefit of an adversary process in

evaluating fee applications such as this in which the primary defendant has

agreed to create a common settlement fund and then must stand mute under the

express terms of the settlement agreement.

38.    Moreover, we undertook this representation with no experience in

acting on behalf of objectors and even though there was little upon which

BLAPC could assure itself of success.  For example, we believe that Judge

Krieger's order, finding that the original fee application violated due process

rights owed to the class, was one of the first of its kind under Rule 23(h).  In

addition, based on our research, fee awards of 20 percent of settlement funds

are quite common and frequently approved.  Nevertheless, given our broader

experience in securities litigation, we believed that a vigorous and principled

objection to class counsel's fee application might well help develop law

protecting the rights of absent class members from overly aggressive fee

applications by class counsel.

39.    Accordingly, we determined to prosecute Engan's and NASI's

objections vigorously and to the same extent that we act for any other client,

even if these efforts displaced work we could do for paying clients or interfere

with our efforts to attract new business.  We did so with the hope and

expectation that if we preserved a significant portion of the common settlement

fund and thus benefitted the class, the court would award us fair and reasonable compensation.

40.    More specifically, in preparing three sets of lengthy and detailed objections to the various submissions by class counsel, BLAPC reviewed nearly every meaningful class counsel fee-related decision in the Tenth Circuit and dozens of other decisions in Circuits around the country.   BLAPC also scrutinized every aspect of each of the three fee applications, including their purported time records, expense records, declarations and other various submissions.  Based on this work, Engan and NASI effectively challenged the Supplemental Fee Application on nearly every meaningful ground; uncovering evidence of routine duplicative and unjustifiable billing, dubious and vague "cut and paste" billing entries, the application of inappropriately high billing rates, submission of deceptive declarative representations concerning alleged support of their fees by certain large institutional investors, and undocumented and unjustifiable expensing.

I declare UNDER THE PAINS AND PENALTIES OF PERJURY under the laws of the United States of America this 27th day of August, 2008 that the foregoing is true and correct.

/S/ Irwin B. Schwartz
Irwin B. Schwartz
Business Litigation Associates, P.C.
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
Phone:  617-421-1800

Attorney for Objectors Natasha L. Engan
and National Automatic Sprinkler Industry
Pension Fund

## Certificate of Service

I, Irwin B. Schwartz, attorney for Natasha L. Engan and National Automatic Sprinkler Industry Pension Fund, hereby certify that on this 27th day of August 2008, I filed the foregoing document with the Clerk of the Court by CM/ECF which will notify all counsel of record registered with ECF of such filing and I sent a true and correct copy of the foregoing document by United States Mail to the following unregistered parties:

Sanford Ress
P.O. Box 1250
Jackson, WY 83001-1250

Lawrence Schonbrun
86 Eucalyptus Rd.
Berkeley, CA 94705

Clifford Whitehill
5320 W. Harbor Village Dr.
Vero Beach, FL 32967

/S/ Irwin B. Schwartz
Irwin B. Schwartz