FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01046-MSK-BNB

UFCW LOCAL 880-RETAIL FOOD EMPLOYERS JOINT PENSION FUND, on Behalf of
Itself and All Others Similarly Situated,

       Plaintiff,

v.

NEWMONT MINING CORP.,
WAYNE W. MURDY,
PIERRE LASSONDE, and
BRUCE D. HANSEN,

       Defendants.
_____

**consolidated with**
_____
Case No. 05-cv-01100-MSK-CBS

JOHN S. CHAPMAN, individually and on behalf of all other similarly situated,

       Plaintiffs,

v.

NEWMONT MINING CORP.,
WAYNE W. MURDY,
PIERRE LASSONDE, and
BRUCE D. HANSEN,

       Defendants.
_____

**consolidated with**
_____

1

Case No. 05-cv-01141-MSK-BNB

ZOE MYERSON, Individually and On Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEWMONT MINING CORP.,
WAYNE W. MURDY,
PIERRE LASSONDE, and
BRUCE D. HANSEN,

      Defendants.

_____

## OPINION AND ORDER GRANTING, IN PART, MOTIONS FOR ATTORNEY'S FEES

_____

     **THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Final Approval of the Settlement **(# 138)**; Interested Party Natasha Engan's Motion for an Interim Award of Attorney fees **(# 166)**, and the Plaintiffs' response **(# 170)**; the Plaintiffs' Objections **(# 221)** to the August 6, 2008 Report **(# 217)** of Special Master Thomas Seawell, recommending that the Plaintiffs' Motion for Attorney fees **(# 158)** be granted in part; Interested Party Lawrence Schonbrun's Motion for Inventive Award **(# 222)**; Ms. Engan's Motion for Attorney fees **(# 225)** and Ms. Engan's reply **( #244)** in further support of her motion; the Plaintiffs' Objections **(# 231, 236, 241)** to the Special Master's August 22, 2008 Report **(# 219)** recommending that the Court find the Plaintiffs' counsel in contempt, and Ms. Engan's response **(# 244)**; and the Defendants' Motion to Set Briefing Schedule **(# 235)** regarding sanctions deriving from a frivolous appeal by putative Intervenor Gideon Minerals.

## <u>BACKGROUND</u>

The Plaintiffs in these consolidated actions are all shareholders of Defendant Newmont Mining Corp. ("Newmont"). In mid-2005, each of the Plaintiffs commenced these securities fraud actions contending that Newmont had made fraudulent statements concerning the quantity and quality of the output of its gold mines in Indonesia. The various actions were consolidated (**#21**) into this action in November 2005, and on April 28, 2006, the Plaintiffs filed a Consolidated Amended Complaint (**# 35**). On July 12, 2006, the Defendants filed a Motion to Dismiss (**# 43**) the Consolidated Complaint, and on April 15, 2006, rather than filing a substantive response to that motion, the Plaintiffs moved to stay the action (**# 50**), informing the Court that the parties had reached a settlement. On October 20, 2006, the Plaintiffs filed a Stipulation of Settlement (**# 67**), and an unopposed motion seeking preliminary approval of that settlement (**# 66**).

As relevant herein, the settlement called for the Defendants to pay a total of $15 million into a settlement fund. Once various costs and expenses were paid and any award of attorney fees satisfied, the remainder of the fund would be disbursed to class members pursuant to a specified formula. The proposed Notice (**# 66-2**) accompanying the Plaintiffs' motion seeking approval of the settlement advised class members that the Plaintiffs intended to apply for a fee award of $5 million, 1/3 of the settlement amount.

The Court preliminarily approved (**# 121**) the settlement and set a hearing to address any objections by class members. A number of class members, including Interested Parties Lawrence Schonbrun and Natasha Engan, filed objections to the proposed settlement (**# 130-134**); generally speaking, the class members objected only to the amount of attorney fees requested by the Plaintiffs.

3

On December 4, 2007, the Plaintiffs filed a Motion for Final Approval (# 138) of the

Settlement, reducing their request for a final award of attorney fees to $3 million, 20% of the

total settlement fund.  At a hearing on December 11, 2008 (# 153), the Court advised the

Plaintiffs that it would approve the proposed settlement in all substantive respects, but that any

application for attorney fees would have to be made by separate motion pursuant to Fed. R. Civ.

P. 54(d)(2).  The Court advised all concerned that it intended to direct the Plaintiffs' fee

application to a Special Master for consideration.

On December 20, 2007, the Plaintiffs filed the instant motion (# 158) seeking an award of

$3 million in attorney fees.  Ms. Engan filed a motion (# 166) seeking an "interim award" of an

unspecified amount of attorney fees as well, on the grounds that her objections to the Plaintiffs'

fee application prompted further Court scrutiny and thus, conferred a benefit on the class

members.  On January 9, 2008, the Court appointed (# 176) Thomas Seawell to serve as Special

Master to consider the parties' various requests for attorney fees.  Thereafter, the parties engaged

in extensive briefing before the Special Master with regard to these issues.

On August 6, 2008, the Special Master issued his final report (# 217) with regard to the

Plaintiffs' fee application.  After reciting the relevant background and procedural facts, the

Master found: (i) that the contingent fee agreement negotiated in the retainer agreement

approved by the Plaintiffs, contemplating a fee award of 20%, was presumptively reasonable

under *In re Cendant Corp. Litigation*, 264 F.3d 201, 281-82 (3d Cir. 2001); (ii) that under a

lodestar analysis, using counsel's 2007 billing rates was appropriate and that the hourly rate to

be charged should not exceed $425 per hour; (iii) that for purposes of the lodestar calculation,

4

various reductions[1] should be made from the hours claimed by counsel to produce a total lodestar of $451,493; (iv) turning to the factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the first factor, the amount of time and labor required, was accounted for fully by the lodestar calculation; (v) that the substantive legal issues presented in the case were not novel, but the factual pattern was complex, warranting an award in the upper range of a reasonable fee; (vi) that factors examining the skill required to perform the legal services and the experience and reputation of the Plaintiffs' counsel are "extremely intangible" and "difficult to evaluate quantitatively," and the Master made no findings on these factors; (vii) that factors examining the extent to which this case precluded counsel from taking on other matters and imposed burdensome time limitations are "of little importance" in the circumstances presented here, and do not warrant an adjustment of a fee award in either direction; (viii) that the fee award requested is "within the range of reasonable fees approved by the 10th Circuit," but that this fact "provides no help in determining a final, specific fee"; (ix) that the fact that the fee arrangement with the Plaintiffs was fully contingent warrants a premium over normal hourly rates; (x) that there was insufficient evidence in the record to permit the Master to make a comparative assessment as to where the results obtained in this case fit along the continuum of possible outcomes; (xi) that the factor weighing the undesirability of the case should be afforded "very

---

[1] Specifically, the Master found that: (i) several timekeepers "pervaisve[ly]" recorded their hours in rounded numbers, "cast[ing] considerable doubt on the accuracy" of those billings, warranting an exclusion of 153 hours valued at roughly $51,000; (ii) some counsel provided generic and redundant "template descriptions" of the services rendered, warranting  a reduction of 192 hours valued at roughly $82,000; (iii) a reduction of 33 hours worth $13,000 was appropriate for vague or meaningless descriptions of services; (iv) the amount of time claimed for preparing a response to the motion to dismiss was excessive and should be reduced by 92 hours valued at approximately $39,000; and (v) the amount of time claimed in the "Settlement" category was excessive, warranting a reduction of 350 hours worth $172,500.

little weight"; (xii) that, as a whole, the *Johnson* factors do not warrant a departure from the presumptively reasonable lodestar award, and thus, that a final fee award of $451,593 should be granted; and (xiii) that expenses in the amount of $48,304.82 should be awarded, with $94,948.77 in expenses rejected.

On August 22, 2008, the Special Master issued a "Status Report" **(# 219)** that recommended that the Court impose contempt sanctions against the Plaintiff's counsel. Specifically, the Master found that the Plaintiffs' counsel made "false and misleading assertions" in various pleadings filed in connection with the fee application.  The crux of the Master's findings relate to representations made by counsel regarding the difficulty of investigating details the possible fraud without the aid of an SEC investigation and because many of the potential witnesses with knowledge of the mine's output were located in Indonesia.  Counsel's filings repeatedly emphasize that "Lead Plaintiff's Counsel" (or some variant thereof) were able to "conduct dozens of interviews" of Newmont personnel.  The Interested Parties objecting to the Plaintiffs' fee application pointed out that none of the timekeepers' records demonstrated counsel's participation in these "dozens of interviews."  In response to those objections, the Plaintiffs' counsel revealed that it "retained outside firms that specialize in locating and interviewing witnesses to accomplish this task."  The Master concluded that the Plaintiffs' counsel's papers "deliberately attempted to convince" the Master and the Court that counsel personally had performed the interviews, in order to give weight to the substantial fee request, and that the later admission that such interviews were conducted by specially-retained investigators revealed counsel's representations to be false.  Thus, the Master recommended that

"the Court initiate contempt proceedings against [the Plaintiffs' counsel] for knowingly submitting false and misleading statements of fact to the Court."

## ANALYSIS

### A. Plaintiffs' Motion for Attorney fees

On August 26, 2008, the Plaintiffs filed a response to the Special Master's recommendation concerning the award of fees.  Although the Plaintiffs' filing sets forth a variety of substantive objections to the Special Master's findings, the Plaintiffs expressly state that in the interests of "bring[ing] this matter to a close and allow[ing] the settlement proceeds to be distributed without delay," they "accept [the Special Master's] recommendation as to the amounts awarded" notwithstanding their disagreement.  Accordingly, the Court understands the Plaintiffs to waive any objections to the Special Master's Recommendation that they be awarded $451,593 in fees and $48,304.82 in costs.  Accordingly, the Court adopts the Special Master's Recommendation (# 217) that the Plaintiffs' Motion for Attorney fees and Costs (# 158) be granted in the amount of $499,897.82.

### B. Incentive Awards

Mr. Schonbrun and Ms. Engan each seek "incentive awards" for having successfully challenged the Plaintiffs' fee application.

Where objectors to a class action settlement provide services that inure to the benefit of the class as a whole, the Court may award reasonable attorney fees to the objector.  *In re Cardinal Health Inc. Securities Litigation,* 550 F.Supp.2d 751, 753 (S.D. Oh. 2008), *citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002).  Such awards may be appropriate where, for example,

the objector forces an adversarial review of the plaintiff's fee request and supplies meaningful legal and factual analysis of the reasonableness of the plaintiff's request. *Id.* At the same time, the mere fact that the plaintiff's fee request is reduced following an objector's objection does not warrant an award; objectors who offer insubstantial arguments against a fee request – or worse, "opportunistic objectors" who challenge fee requests largely in the hopes of obtaining their own personal payout – should not be rewarded simply because they joined the battle on the side that prevailed. *Id.*, *citing Spark v. MBNA Corp.*, 289 F.Supp.2d 510, 513-14 (D. Del. 2003). Although it has not expounded upon the subject in any particular detail, the 10th Circuit appears to recognize the "established law" that "objectors who do indeed confer a benefit upon the fund may be compensated for that benefit." *Gottlieb v. Barry*, 43 F.3d 474, 491 n. 16 (10th Cir. 1994).

Mr. Schonbrun requests an "incentive award in an amount between $55,000 and $85,000," plus an award of expenses in the amount of $365.60, based on his objections to the Plaintiffs' fee request and his participation in the process before the Special Master. The precise nature of the "incentive award" Mr. Schonbrun requests is unclear. It does not appear to be compensation for attorney fees incurred by Mr. Schonbrun, as his filings in this case expressly state that he appears *pro se*.[2] Rather, it appears that the award contemplated by Mr. Schonbrun is either a non-compensatory, arbitrarily-valued "bounty" to reward him for challenging the Plaintiffs' fee request, or some form of recompense for the "40 to 50 hours" of his time that he estimates spending on this case.

---

[2]It is not clear whether Mr. Schonbrun is himself a lawyer. Even assuming he is, under most fee shifting statutes, attorney fees may not be awarded to *pro se* litigants even if the litigant is himself a lawyer. *Kay v. Ehrler*, 499 U.S. 432, 438 (1991); *Demarest v. Manspeaker*, 948 F.2d 655, 656 (10th Cir. 1991).

The Court has some doubt that a non-compensatory "incentive award" to an objector – as opposed to an award of the objector's reasonable attorney fees – can ever be appropriate. Courts have occasionally granted non-compensatory "incentive awards" to induce class members to step forward and shoulder the particular burdens that accompany designation as named class representative.[3]  *See e.g. In re Synthroid Marketing Litigation*, 264 F.3d 712, 722-23 (7th Cir. 2001) (also noting that there is "no need" for an incentive award if other class members stepped forward without the lure of an award).  But this Court is aware of no substantial authority in which a court has granted a non-compensatory bounty to an objector simply because the objector successfully sought reduction of the class counsel's fee request.  Mr. Schonbrun extensively cites cases approving of incentive awards for class representatives, but only a single citation is offered for the proposition that parties' whose participation in the litigation is limited to opposing a fee request should also be considered for such an award.  That case, *Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J. App. 2008), is factually distinct[4] and unpersuasive.

In any event, even assuming that this Court has the discretion to grant non-compensatory (or awards compensating litigants for their own time spent on the case) awards to objectors, the Court would decline to make such an award to Mr. Schonbrun under the current record.

---

[3]*But see* 15 U.S.C. §78u-4(a)(2)(A)(vi), (a)(4) (portions of Private Securities Litigation Reform Act calling into doubt the practice of making "incentive awards" – other than awards of attorney fees and costs – to class representatives).

[4]In *Machulsky*, the class member seeking the incentive award participated substantively in the litigation as an intervenor, engaging in discovery and joining in a partially successful summary judgment motion that prompted renegotiation of a prior settlement.  Although the court rejected his argument that this made him a "de facto class representative," a class member's substantive participation in the litigation is clearly distinguishable from a class member whose participation is limited to challenging the successful plaintiff's attorney's fee request.

Although it is clear that Mr. Schonbrun participated in matters before the Special Master, it is not clear that Mr. Schonbrun's particular efforts conferred a benefit on the class. Although Mr. Schonbrun raised objections (# 198) to various aspects of the Plaintiffs' counsel's request, those objections were general in nature, largely unsupported by specific citation to the record or to supporting caselaw, and, compared to the far more comprehensive objections submitted by Ms. Engan (# 196), lacking in meaningful analysis. Mr. Schonbrun does not point to any particular argument that was uniquely raised by him, nor point to any argument of his that was both asserted in greater detail than other objectors and adopted in substance by the Special Master. Given that his same objections were more comprehensively raised by another objector, the Court cannot find that Mr. Schonbrun has carried his burden of showing that his actions resulted in a substantial benefit to the class such that an incentive award of any kind is appropriate. Accordingly, Mr. Schonbrun's motion seeking an incentive award is denied.

Ms. Engan requests an award of attorney fees and costs incurred by her in objecting to the Plaintiffs' fee request. As discussed above, objectors whose actions confer a benefit on the class may be entitled to an award of their reasonable attorney fees. Although the Court does not agree with all of the representations made in Ms. Engan's motion, the Court finds that her efforts significantly contributed to the Special Master's decision to substantially reduce the Plaintiffs' requested fees. Among other things, the Special Master's report specifically refers to the fact that a paralegal employed by Ms. Engan " had undertaken some data analysis" that the Special Master apparently considered, and the Master's report adopts certain calculations offered by Ms. Engan regarding hourly rates. In addition, the affidavit supplied by Mr. Schwartz, Ms. Engan's counsel, and a review of Ms. Engan's objections, reveal many particular respects in which the

Special Master apparently agreed with specific arguments comprehensively urged by Ms. Engan – *e.g.* that the Special Master agreed with Ms. Engan's arguments regarding the Plaintiffs' counsel's "template billing"; that the costs claimed by the Plaintiffs were unreasonable.  The Special Master's ultimate award of fees to the Plaintiff dramatically reduced the $3 million originally sought, and thus, the Court finds that the services provided by Ms. Engan in objecting to the fee request conferred a benefit on class members sufficient to entitle her to a reasonable fee award.

Accordingly, the Court turns to the question of how a reasonable fee to Ms. Engan should be calculated.  In *Gottlieb*, the 10th Circuit discussed two ways in which attorney fees in common fund cases may be determined: the lodestar method and the "percentage of the fund" method.[5] 43 F.3d at 482.  The court indicated that "either method is permissible," but notes that the general trend favors application of the "percentage of the fund" method.  *Id.* at 483.

Ms. Engan's motion indicates that her total outlay of attorney fees in this case (*i.e.* her calculation of the lodestar) is $111,137.92.  She argues that, under a "percentage of the fund" method, her efforts resulted in a benefit to the class of $2.5 million, and that an award of as much as 10% of that sum to her would be fair.  However, she acknowledges that even a "percentage of the fund" award must be tempered by consideration of the lodestar amount, and that once the *Johnson* factors are applied under either method, an award of $166,706.88 is appropriate.[6]

---

[5]An award under either method is thereafter subject to adjustment based on the *Johnson* factors.  43 F.3d at 483.

[6]Ms. Engan also seeks recovery of costs of $2,605.38.

Having carefully considered the 10th Circuit's reasoning in *Gottlieb* and similar cases, this Court finds that, notwithstanding the general preference for the "percentage of the fund" method in common fund cases, the lodestar method is the better means of calculating a reasonable attorney's fee in this circumstance. Both *Gottlieb* and the cases it primarily relies upon, *Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988) and *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir.1993), involved calculating an appropriate attorney's fee to award <u>class counsel</u>, rather than objectors.

There is a distinction between the two. Class counsel incur extensive costs and considerable risk in developing a substantive case, and thus, should be eligible for a substantial additional reward should those efforts prove successful. By contrast, counsel who appear in an action solely to challenge a request for attorney fees risk relatively little, and thus, far less of a premium over the normal lodestar calculation is warranted to encourage counsel to shoulder such risks.

To restate this in the language of the *Johnson* factors, compared to the substantive class claims, a challenge to an attorney's fee award requires comparatively less expenditure of time and labor, involves more routine questions of fact and law, and requires no unusual skill or experience by counsel.[7] The lodestar calculation – which effectively rewards counsel at their full

---

[7]Admittedly, the *Johnson* factors also examine whether the work was performed under a contingent fee arrangement. Ms. Engan makes clear that her counsel agreed to pursue her objections to the Plaintiffs' fee request on a contingent basis. The Court has some difficulty in envisioning how Ms. Engan's counsel will extract their contingency, as Ms. Engan will only receive a small, *pro-rata* share of the $2.5 million that was preserved in the settlement fund as a result of her and her counsel's efforts. The only way in which Ms. Engan's counsel will realize a "contingent" percentage of the $2.5 million is by the grace of the Court in adopting the "percentage of the fund" method in awarding attorney fees. In that respect, it appears that the "contingent fee" agreed to by her counsel is a contingent fee in name only.

hourly rate for all hours reasonably expended – offers sufficient incentive for counsel to challenge a fee application; given the relatively small risk involved, this Court simply does not see why a premium over full hourly recompense is necessary to encourage counsel to engage in relatively straightforward, largely inexpensive work.  Accordingly, the Court will award Ms. Engan attorney fees under the traditional lodestar analysis.

Under the lodestar method, the Court first considers the appropriate hourly rate.  In this case, the rates claimed by Ms. Engan are within the $425/hour cap applied by the Special Master to the Plaintiffs' fee request, and in the absence of objections from any other party, the Court finds that the rates requested by Ms. Engan are reasonable.

As to the amounts reasonably expended on the litigation, the Court disagrees with Ms. Engan that all of the hours her counsel billed in this case should be compensable. *Spark*, 289 F.Supp.2d at 513 ("objectors will not be awarded fees for all of their work conducted in the course of the litigation," but only for that which "substantially enhanced the benefits to the class under the settlement").  In particular, Ms. Engan seeks to recover fees incurred prior to the appointment of the Special Master – namely, fees incurred in challenging the Plaintiffs' initial $5 million fee request, in appearing at the December 11, 2007 hearing regarding approval of the settlement, and in selecting the Special Master. The Court finds that the services reflected by these fees did not confer any particular benefit on the class, and thus, these fees are not recoverable.

Ms. Engan's belief that her initial objections to the Plaintiffs' $5 million fee request prompted the Plaintiffs' decision to reduce its that request by $2 million is largely speculative. Ms. Engan's belief that, without her objections, the Court would not have directed the Plaintiffs'

filing of a separate, stand alone motion for attorney fees is misplaced, and, in any event, such efforts merely affected the <u>procedure</u> by which the Plaintiffs' fee request would be considered and cannot be said to have necessarily conferred any particular <u>substantive</u> benefit on the class. Similarly, Ms. Engan's involvement in proposing candidates for Special Master cannot be said to have conferred any particular benefit on the class. Accordingly, the Court declines to make anything more than a nominal award[8] to Ms. Engan for time spent prior to the appointment of the Special Master.

By contrast, the Court has reviewed Ms. Engan's counsel's billing records for time spent after the Special Master's appointment on January 9, 2008, and finds the bulk[9] of that time – $40,255.18 in fees and $1,369.94 in costs – to be compensable. The Court finds that these amounts are reasonable and reflect services that conferred a substantial benefit on class members. For the reasons stated above, the Court declines to adjust that amount under the *Johnson* factors. Accordingly, the Court grants Ms. Engan's motion for attorney fees in part, awarding her $40,255.18 in fees and $1,369.94 in costs to reflect the benefit her services conferred upon the fund.[10]

---

[8]Arguably, Ms. Engan would have had to expend some time to draft and file objections to the settlement in order to preserve her right to participate in any subsequent review of the Plaintiffs' requested fee. As discussed below, the Court's calculation of the lodestar figure will reflect an appropriate amount of time for these tasks.

[9]Among the items that the Court would deem non-compensable would be legal research in late July 2008, regarding objectors' entitlement to claim their own attorney fees. Although important to Ms. Engan and her counsel, this research does not inure to the benefit of the class. Nevertheless, any amounts excludable on these grounds would be offset by compensable-but-unclaimed time incurred in drafting Ms. Engan's initial objections to the settlement, and thus, the Court makes no adjustment to the amount claimed after January 9, 2008.

[10]Ms. Engan's separate motion for an "interim" award of fees is denied as moot.

### C.  Contempt

In a separate Report (**# 219**) on August 22, 2008, the Special Master recommended that the Court initiate contempt proceedings against the Plaintiffs' counsel.  As explained in more detail in that Report, the Special Master concluded that Plaintiffs' counsel "deliberately attempted to convince the other parties, me, and ultimately, the Court, that they had performed the significant undertaking of interviewing dozens of witnesses in numerous places around the world."  The Master recommends "that the Court initiate contempt proceedings [against Plaintiffs' counsel] for knowingly submitting false and misleading statements of fact to the Court."

The Court has carefully and thoroughly reviewed the documents cited in the Special Master's Report, as well as the parties' submissions in response to that Report.  With due deference to the Special Master's diligent review and thoughtful consideration of the matter, this Court declines to adopt the recommendation that contempt procedures be invoked in these circumstances for several reasons.

The challenged representations concern a past, completed act, and therefore any contempt penalty imposed would necessarily be criminal in nature.  *Intl. Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828-29 (1994). A citation of criminal contempt  requires a showing that the contemnor's action was willful.  *In re Contempt Order*, 441 F.3d 1266, 1268 (10th Cir. 2006), *citing U.S. v. Themy-Kotronakis*, 140 F.3d 858, 861 (10th Cir. 1998).

Even if one assumes that the cited passages in the Plaintiffs' counsel's affidavits constitute misrepresentations, the affiant's state of mind is critical.  The Court recognizes that the Special Master concluded that because the Plaintiffs' counsel stood to gain – in the sense that its

application for fees would be bolstered – and that such motive drove the misrepresentations. But the Court cannot simply adopt the findings of the Special Master on this issue.  Determination of the affiant's intent, and therefore whether his actions were contemptible, requires an evidentiary hearing at which the affiant is entitled to representation by counsel.  *Bagwell,* 512 U.S. at 833. None was conducted, nor was one authorized to be conducted by the Special Master.

To conduct a such hearing at this juncture creates its own problems.  It is unclear who the movant as to the contempt request would be.  It would unnecessarily burden the Special Master (who, arguably, could become a witness)  with time and tasks exceeding his appointment, and there may be no means for compensating him for his time in this regard.  It is also unclear how this issue would impact the parties and whether it would delay the distribution of the fund to claimants.

Without diminishing the importance of the concerns expressed by the Special Master, it appears that the fundamental issue is less one of contempt, and more one of professional ethics – particularly, an attorney's obligation of candor to a tribunal. Rule 3.3 of the Colorado Rules of Professional Conduct prohibits attorneys from making a false statement of material fact to a tribunal, including a Special Master acting at the Court's direction.  Should the Special Master so request, this Court will forward his contempt recommendation to the Committee on Discipline of the Court and to the Attorney Regulation Committee of the Colorado Supreme Court as a grievance.  However, the Court respectfully declines the Special Master's recommendation to impose contempt sanctions.

### D.  Remaining matters

It remains for the Court to enter final approval of the settlement and direct the

disbursement of the settlement funds to the class members, which the Court does by order issued

simultaneously herewith.  Within 10 days of the date of this Order, the Special Master shall file a

final invoice for the services he has provided, and the Plaintiffs shall thereafter disburse the

settlement funds according to the terms of the settlement agreement and final order.  Upon entry

of the order finally approving the settlement, the Court will close this case.

The Defendants move the Court to set a briefing schedule to address the 10th Circuit's

award of "just damages, double costs, and attorney fees" stemming from putative Intervenor

Gideon Minerals *et al*.'s frivolous appeal.  *See UFCW Local 880 v. Newmont Mining Corp.*, 261

Fed.Appx. 105, 110 (10th Cir. 2008) (unpublished).  Although the Court has some question as to

why a "briefing schedule," as opposed to a motion for fees initiated by the Defendants, is

necessary to effectuate the 10th Circuit's instructions, the Court will nevertheless grant the relief

requested by the Defendants.  Within 14 days of the date of this Order, the Defendants shall file

an appropriately-supported motion specifying the damages, costs, and fees encompassed by the

10th Circuit's order.  This motion shall include a certification that it was duly served on Gideon's

counsel.  Within 14 days of that motion, Gideon may file a response challenging the amounts

requested by the Defendants, and the Defendants' reply, if any, shall be filed within 5 days of the

date of the filing of Gideon's response.  No extension of these deadlines will be granted.  An

order fixing the award to the Defendants shall follow thereafter.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Final Approval of the Settlement (**# 138**) is **GRANTED**, and a separate Order shall enter granting final approval of the settlement. Interested Party Natasha Engan's Motion for an Interim Award of Attorney fees (**# 166**) is **DENIED AS MOOT**. The Plaintiffs' Motion for Attorney fees (**# 158**) is **GRANTED IN PART**, insofar as the Plaintiffs are awarded $451,593 in attorney fees and $48,304.82 in costs. Interested Party Lawrence Schonbrun's Motion for Inventive Award (**# 222**) is **DENIED**. Ms. Engan's Motion for Attorney fees (**# 225**) is **GRANTED IN PART**, insofar as Ms. Engan is awarded $40,255.18 in attorney fees and $1,369.94 in costs, payable from the settlement fund. The Plaintiffs' Objections (**# 231, 236, 241**) to the Special Master's August 22, 2008 Report (**# 219**) recommending that the Court find the Plaintiffs' counsel in contempt are **SUSTAINED**, and the Court declines to adopt the Special Master's recommendation on this point. The Defendants' Motion to Set Briefing Schedule (**# 235**) is **GRANTED** on the terms set forth herein. The Special Master shall file a final invoice for his services within 10 days of the date of this Order. Upon entry of this Order and the Final Order Approving Settlement, the Clerk of the Court shall close this case.

Dated this 30th day of September, 2008

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge